**FILED**
**Jan 25, 2019**
**09:32 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| Sheila Owens, | ) | Docket No. 2017-01-0401 |
| Employee, | ) | |
| | ) | |
| v. | ) | |
| Sitters, Etc., | ) | State File No. 44323-2015 |
| Employer, | ) | |
| And | ) | |
| Bridgefield Casualty Ins. Co., | ) | Judge Audrey Headrick |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER

This matter came before the Court on January 7, 2019, on Sheila Owens' Request for Expedited Hearing. Sitters, Etc. (Sitters) accepted Ms. Owens' June 9, 2015 claim for shoulder and back injuries but denied her neck condition. The central legal issue is whether Ms. Owens is likely to establish at a hearing on the merits that her work injury primarily caused the need for neck surgery. The Court holds Ms. Owens is and grants the requested benefit.

### Procedural History of Claim
*March 2018 Expedited Hearing (Decision on the Record)*

In March 2018, the Court ordered Sitters to provide a panel of orthopedic surgeons for treatment, including surgery, for Ms. Owens' neck. On appeal, the Workers' Compensation Appeals Board reversed and concluded that Ms. Owens did not satisfy her burden of proving she sustained a compensable aggravation of a pre-existing condition.

*January 7, 2019 Expedited Hearing*

In the current Expedited Hearing, the parties submitted the same evidence by way of depositions and medical records. The Court also heard testimony from Ms. Owens and four corroborating witnesses. The only new information derived from the medical proof

1

consisted of correction of a typographical error made in a doctor's deposition as discussed below.

The Court summarizes the deposition and live testimony as follows:

Ms. Owens, a nursing assistant for Sitters, injured her left shoulder and low back on June 9, 2015. She saw Dr. Rickey Hutcheson by direct referral from authorized providers for her low back, and she selected Dr. Robert Mastey from a panel to treat her left shoulder. Sitters accepted those injuries as compensable.

While treating with Dr. Mastey, Ms. Owens simultaneously sought unauthorized treatment with Dr. Richard Pearce, a board-certified orthopedic surgeon, for her neck. Dr. Pearce, who took over the practice of Dr. Mastey's former partner, treated Ms. Owens for her neck pain and bilateral extremity numbness and tingling. She reported that her symptoms began after a 2000 work injury and worsened after the June 2015 injury with Sitters. The carrier for the 2000 work injury authorized Dr. Pearce's treatment. After ordering diagnostic testing, Dr. Pearce recommended surgery due to the significant cord compression at C3-4.

Dr. Pearce addressed the factors he considered important in determining whether Ms. Owens' June 2015 injury caused her neck condition.[1] First, he considered the history she provided regarding the onset of her symptoms and diagnostic studies. Based on the 2013 and 2016 CT scans and a post-June 9 MRI, Dr. Pearce stated Ms. Owens had an anatomic compression at C3-4. He believed that the June injury made her anatomical findings worse. When asked if the June injury caused Ms. Owens' condition, Dr. Pearce testified that, "Based on the history that she gave to me as far as onset of symptoms and the anatomic findings at C3-4 being obviously a level not previously operated on, I would relate it as to [the June 9] event."

During cross-examination, Dr. Pearce testified, "[T]here's definitely been an anatomic change" due to the amount of cord compression and size of the disc herniation. Dr. Pearce acknowledged he could not say that the change occurred on June 9 "but based on her history, there has been worsening." Considering Ms. Owens' history, his assumption was "that [it was made worse on that date." When comparing her diagnostic tests, Dr. Pearce noted several conditions not present before June 9: spondylolisthesis, stenosis, and, a broad-based disc bulge with overlapping central disc protrusions at C3-4. After reviewing all of Ms. Owens' diagnostic tests, Dr. Pearce testified "her condition at

---

[1] Dr. Mastey was aware of Ms. Owens' prior neck surgeries because his former partner performed them. He not only declined to offer a causation opinion but also repeatedly deferred to Dr. Pearce regarding Ms. Owens' neck condition.

2

C3-4 was *proximately* caused by her [June 9 injury]." (Emphasis added.)[2] Further, responding to correspondence asking if the need for surgery was "[c]aused by the old condition being aggravated by the [June 9, 2015] injury," Dr. Pearce answered "yes."

After receiving notice of Ms. Owens' neck condition, Sitters sent her to Dr. Jay Jolley, a board-certified orthopedic surgeon, for an independent medical evaluation. Dr. Jolley reviewed a limited number of diagnostic tests. He testified that her "overwhelming degeneration and arthritis at [C3-4] [caused] her significant pain and [was] more responsible [for the recommended surgery] than the incident." While Dr. Jolley agreed that surgery was reasonable, he did not think her C3-4 condition was injury-related. However, Dr. Jolley acknowledged that on June 9, 2015, "there could've been some aggravation of the pre-existing degeneration." When asked if he agreed with Dr. Pearce's response to whether the need for surgery was "[c]aused by the old condition being aggravated by the [June 9] injury," Dr. Jolley said, "Yes."

At the hearing, Ms. Owens and four corroborating witnesses testified about the change in her activity level after the June 9 injury.[3] Before then, Ms. Owens performed heavy, manual lifting and was capable of strenuous tasks outside of work such as mowing, painting, cleaning, gardening, driving, and cooking. Afterward, Ms. Owens was unable to return to work and either stopped performing her pre-injury physical activities or performed them on a limited basis with breaks. She experienced daily pain, tightness, and a shocking sensation in her neck with stinging in her hands.

Ms. Owens asked the Court to order Sitters to authorize the recommended neck surgery. She contended that Dr. Mastey deferred to Dr. Pearce's opinion regarding causation. Dr. Pearce causally related her neck condition and need for surgery to the June 9 injury after reviewing all of Ms. Owens' diagnostic tests. However, Dr. Jolley provided a causation opinion without reviewing all of her diagnostic tests. Further, Ms. Owens argued that the lay testimony presented combined with Dr. Pearce's testimony established she is likely to prevail at trial.

Sitters countered that the recommended neck surgery is not related to the June 9 injury. It stated that Dr. Pearce's testimony is insufficient to support an award of benefits. Sitters asserted Dr. Pearce based his opinions on false and/or incomplete information, making them unreliable. It also contended that his testimony failed to rebut the presumption of correctness afforded to the opinions of Drs. Mastey and Hutcheson, who did not testify regarding the existence of a work-related neck injury. It argued that "[t]he Trial Court either misread or mischaracterized [Dr. Mastey's] testimony to

---

[2] Following the Decision on the Record, the Court entered an order correcting Dr. Pearce's deposition to reflect the word "proximately" in lieu of "proximally."

[3] The following witnesses testified: Patrice Hester; Katherine Hunkapiller; Daphne MacCrary; and, Allen Jackson.

3

determine that he provided no opinion." Further, Sitters argued that Ms. Owens did not meet her burden after amending the record to correct Dr. Pearce's transcript.

## Findings of Fact and Conclusions of Law
*General Legal Principles*

Ms. Owens must present sufficient evidence that she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court holds Ms. Owens is likely to prevail at a hearing on the merits that she is entitled to medical benefits for her neck.

*Medical Benefits*

Ms. Owens requested that the Court order Sitters to authorize the recommended neck surgery ordered by Dr. Pearce. She must show, to a reasonable degree of medical certainty, that the June 9 incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14). Further, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* As panel physicians, Drs. Hutcheson and Mastey's opinions regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." *Id.*

However, the Court again finds that Drs. Hutcheson and Mastey are not entitled to the statutory presumption of correctness because neither gave an opinion on causation of her neck condition.[4] Dr. Mastey provided no opinion regarding causation and deferred to Dr. Pearce. Similarly, Dr. Hutcheson offered no causation opinion. Therefore, the Court holds that the statutory presumption of correctness afforded to Drs. Hutcheson and Mastey is not applicable.

Since Drs. Hutcheson and Mastey did not offer causation opinions, the Court considers the expert opinions of Drs. Pearce and Jolley. Regarding Dr. Pearce, the only change in his testimony since the prior order is the record correction of his deposition. Dr. Pearce reviewed all of Ms. Owens' diagnostic tests and agreed "her condition at C3-4 was *proximately* caused by her [June 9 injury]." (Emphasis added.) He provided a causation opinion based on Ms. Owens' C3-4 anatomic changes and the history she gave. Sitters relied upon Dr. Jolley's opinion, which indicated that Ms. Owens' C3-4 condition was caused by degeneration and arthritis. Although Dr. Jolley stated that her pre-existing condition was "more responsible" for the recommended surgery, he acknowledged that

---

[4] This is the same conclusion previously reached by the Appeals Board.

4

"there could've been some aggravation of the pre-existing degeneration." Dr. Jolley also agreed with Dr. Pearce's response that the need for surgery was "[c]aused by the old condition being aggravated by the [June 9] injury." Based on these conflicting opinions, the Court must determine which to accept.

When faced with competing medical proof, the Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (July 6, 2016). Further, the Court may accept the opinion of one expert over another if it contains the more probable explanation. *Ledford v. Mid-Georgia Courier*, 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *7 (June 4, 2018).

Here, Drs. Pearce and Jolley are board-certified orthopedic surgeons equally qualified to provide causation opinions. Dr. Pearce saw Ms. Owens on several occasions, while Dr. Jolley performed a one-time evaluation. Tennessee law considers it reasonable to conclude that the physician having greater contact with an injured worker has an advantage in providing a more in-depth, if not more accurate opinion. *Bass v. Home Depot U.S.A., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36 at *14 (May 26, 2017). Dr. Pearce reviewed all of Ms. Owens' diagnostic tests during his deposition. Dr. Jolley reviewed a limited number of tests and anticipated that additional tests would show progressive, degenerative changes. Dr. Pearce based his opinions on the diagnostic test findings demonstrating anatomic changes along with the history given by Ms. Owens. After considering the competing medical proof, the Court accepts Dr. Pearce's opinions over Dr. Jolley's.

Along with Dr. Pearce's opinion, the Court also considers the lay testimony of Ms. Owens and her corroborating witnesses. The lay testimony of an employee is relevant to the issue of causation. Tennessee law has long held that medical testimony is not to be "read and evaluated in a vacuum," and medical proof "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Dr. Pearce relied upon the history Ms. Owens provided regarding the June 9 accident causing her pre-existing neck symptoms to worsen, which led to Dr. Pearce recommending surgery. Further, based on its direct observation of Ms. Owens and her witnesses, the Court finds they were steady, forthcoming, and honest regarding her condition. *Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014). The Court finds them credible.

When considering Dr. Pearce's opinion and lay witness testimony, the Court holds that Ms. Owens provided sufficient evidence of her entitlement to the requested neck surgery and satisfied her burden at this interlocutory stage. Her request for relief is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Sitters or its workers' compensation carrier shall provide a panel of orthopedic surgeons for treatment, including surgery, of the neck injury. Ms. Owens or the providers shall furnish bills for the charges incurred for compensable care to Sitters or its carrier, who shall timely pay them.

2. This matter is set for a **Status Hearing** on **Thursday, April 11, 2019, at 10:00 a.m. Eastern Time**. The parties must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without the parties' participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED January 25, 2019.**

**JUDGE AUDREY A. HEADRICK**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. First Report
2. Panel
3. Wage Statement
4. Deposition of Sheila D. Owens
5. Deposition of Rickey Hutcheson, D.O.
6. Deposition of Robert Daniel Mastey, M.D.
7. Deposition of Richard G. Pearce, M.D.
8. Deposition of Jay E. Jolley, M.D.
9. Billing statements
10. Joint Filing of Medical Records

Technical record:
1. Expedited Hearing Order, entered March 12, 2018
2. Workers' Compensation Appeals Board Opinion, entered May 29, 2018
3. Motion to Correct the Record, filed May 31, 2018
4. Certificate of Correction to the Deposition of Richard G. Pearce, M.D., filed May 31, 2018
5. Employer's Response to Employee's Motion to Correct the Record, filed June 4, 2018
6. Amended Motion to Correct the Record, filed June 5, 2018
7. Employer's Response to Employee's Amended Motion to Correct the Record, filed June 7, 2018
8. Brief in Support of Amended Motion to Correct the Record, filed June 13, 2018
9. Order Granting Amended Motion to Correct the Record, entered June 18, 2018
10. Order of the Tennessee Supreme Court dismissing appeal, entered June 29, 2018
11. Scheduling Hearing Order, filed July 23, 2018 [I'm not going to list all of the filings made by the parties in preparation of the CH that was previously set.]
12. Dispute Certification Notice, filed November 7, 2018
13. Order Continuing Compensation Hearing and Setting Case for Status Hearing, entered November 7, 2018
14. Order Setting Case for Expedited Hearing, entered November 21, 2018
15. Request for Expedited Hearing, filed November 27, 2018
16. Notice of Expedited Hearing, filed November 27, 2018
17. Employer's Brief in Response to Employee's Request for Expedited Hearing, filed December 17, 2018
18. Employee's Supplemental Pre-Hearing Brief, filed January 4, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on January 25, 2019.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Ronald J. Berke, Employee Attorney | | | X | ronnie@berkeattys.com margo@berkeattys.com |
| Charles E. Pierce, Employer Attorney | | | X | cepierce@mijs.com |

_Penny Shrum_ w/permission

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

### List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                     RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries        $ _____ per month       Telephone       $ _____ per month

Electricity      $ _____ per month       School Supplies $ _____ per month

Water            $ _____ per month       Clothing        $ _____ per month

Gas              $ _____ per month       Child Care      $ _____ per month

Transportation   $ _____ per month       Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile           $ _____      (FMV) _____

Checking/Savings Acct. $ _____

House                $ _____      (FMV) _____

Other                $ _____      Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____ , 20 _____ .


_____

NOTARY PUBLIC

My Commission Expires: _____